## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHARON STOKES,

   Plaintiff,

  v.

COLUMBIA COUNTY
COMMISSIONERS, COLUMBIA
COUTY PRISONS AND COLUMBIA
COUNTY, WARDEN DAVID
VARANO (*individually*), LT. DAVID
MCCOY (*individually*), SGT.
MCCABE (*first name unknown*)
(*individually*), and MARCIE
STRACHKO (individually)

   Defendants.

No. 4:19-CV-02147

(Judge Brann)

## MEMORANDUM OPINION

### SEPTEMBER 1, 2020

## I.   BACKGROUND

On May 15, 2020, Plaintiff Sharon Stokes filed a nine-count complaint

against Defendants: Columbia County Commissioners, Columbia Couty [*sic*]

Prisons and Columbia County, and a set of individual defendants: Warden David

Varano, Lt. David McCoy, Sgt. McCabe (first name unknown), and Marcie

Strachko.[1]  On May 29, 2020, Defendants filed a partial motion to dismiss pursuant

to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2]

---

[1]  *See* Doc. 15.

[2]  *See* Doc. 16.

Stokes' first, third, seventh, and ninth counts are for discrimination: under the Americans with Disabilities Act, Title VII, and the Pennsylvania Human Relations Act.[3]  Her second, fourth, sixth, and eighth counts are for retaliation: under the Americans with Disabilities Act, Title VII, the Family Medical Leave Act, and the Pennsylvania Human Relations Act.[4]  Her fifth count is for interference with the Family Medical Leave Act.[5]

Defendants seek to dismiss Stokes' second, fourth, and eighth counts.[6]  The Court grants in part and denies in part Defendants' motion.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a pleading"[7] and "streamlines litigation by dispensing with needless discovery and factfinding."[8]  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[9]  This is true of any claim, "without regard to whether it

---

3    *See* Doc. 15 at ¶¶ 115-29, 134-42, 168-74, 178-80.
4    *See* Doc. 15 at ¶¶ 130-33, 143-52, 159-67, 175-77.
5    *See* Doc. 15 at ¶¶ 153-58.
6    *See* Doc. 18 at 2.
7    *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).
8    *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).
9    *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

is based on an outlandish legal theory or on a close but ultimately unavailing one."[10]

Following the Roberts Court's "civil procedure revival,"[11] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[12] and *Ashcroft v. Iqbal*[13] tightened the standard that district courts must apply to 12(b)(6) motions.  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[14]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[17]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts

---

10   *Neitzke*, 490 U.S. at 327.
11   Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 REV. LITIG. 313, 316, 319-20 (2012).
12   550 U.S. 544 (2007).
13   556 U.S. 662, 678 (2009).
14   *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
15   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
16   *Iqbal*, 556 U.S. at 678.
17   *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[18]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[19]  No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[20]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[21]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[22]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[23]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must tak[e] note of the elements [the] plaintiff must plead to state a

---

[18]  *Twombly*, 550 U.S. at 556.

[19]  *Iqbal*, 556 U.S. at 679.

[20]  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[21]  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[22]  *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[23]  *Iqbal*, 556 U.S. at 678.

claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[24]

A plaintiff in an employment discrimination case does not need to establish a *prima facie* case in his or her complaint. The United States Court of Appeals for the Third Circuit clarified this point recently, stating: "a complaint need not establish a *prima facie* case in order to survive a motion to dismiss."[25]

### B.    Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which I must accept as true for the purposes of this motion, are as follows.[26]

### 1.    Stokes' Employment

On or around April 26, 2016, Stokes began her employment with Defendant Columbia County Prison, working as a part-time corrections officer.[27] It is alleged that on or around June 26, 2019, Stokes was promoted to a full-time position.[28]

Stokes was terminated on or around November 2018.[29] At that time, Stokes had been receiving satisfactory job performance reviews.[30] But Defendants cursed

---

[24]  *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

[25]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (Jordan, J.).

[26]  The Court notes that several of Stokes' allegations are merely conclusory, and, therefore, the Court does not include these allegations in its recitation of the amended complaint's facts. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[27]  Doc. 15 at ¶ 20.

[28]  Doc. 15 at ¶ 21. The Court concludes that this date is in error, as it is subsequently alleged that Stokes was terminated from her employment in November 2018.

[29]  Doc. 15 at ¶ 23.

[30]  Doc. 15 at ¶ 23.

and yelled at Stokes, and they asked her inappropriate and vulgar questions about her sex life.[31]  Defendants did not treat Stokes' similarly-situated male and non-disabled coworkers the same way.[32]

For example, Defendants asked Stokes: "Do you have strap-ons?" and "What color are your strap-ons?"—asking Stokes whether she strapped on a fake penis and used it in sexual acts.[33]  Defendants said that Stokes was "too butch" to be a woman and that Stokes "probably had a penis."[34]  Defendants also asked if Stokes "fucked other women."[35]  These comments and conduct were based on the fact that Stokes' appearance was not what Defendants believed a woman should look, dress, and act like.[36]

Defendants asked Stokes: "How do you have sex?"[37]  And Defendants asked Stokes "if she was a giver or receiving [*sic*]," "are you a giver or a receiver?" and "are you on top?"[38]  Defendants asked Stokes if she "received the sexual act or was more like a male who 'gave' the sexual act."[39]  Defendants meant these questions to infer that Stokes was not capable of having sexual intercourse like any other female employees were.[40]

---

[31]  Doc. 15 at ¶¶ 26-28.
[32]  Doc. 15 at ¶ 29.
[33]  Doc. 15 at ¶¶ 32-34.
[34]  Doc. 15 at ¶¶ 37-38.
[35]  Doc. 15 at ¶ 39.
[36]  Doc. 15 at ¶ 40.
[37]  Doc. 15 at ¶ 41.
[38]  Doc. 15 at ¶ 42.
[39]  Doc. 15 at ¶ 44.
[40]  Doc. 15 at ¶ 43.

### 2. Stokes' Assignments

Stokes was notified three weeks into her employment that she was not allowed to work on male blocks.[41]  Stokes is a Department of Corrections trained and certified corrections officer, and she is therefore eligible to work on both male and female blocks.[42]  Defendants told Stokes that they were uncomfortable with females working on male blocks, and that they would not allow Stokes to work on a male block.[43]

Throughout her employment, Stokes worked second shift, which is a shift that is assigned to individuals as "punishment."[44]  Stokes was continually assigned to the most difficult block as a punishment.[45]  Other female employees whose appearance conformed to sex and gender norms were not subjected to work assignments as punishment.[46]

Stokes worked 23 shifts a month, for 18 months, on Bravo Block.[47]  Bravo Block is a punishment and is used as a punishment for corrections officers who Defendants wanted to punish or make an example.  To wit, Defendants would use a Bravo Block assignment as a threat ("if you don't want out you'll end up on

---

[41]  Doc. 15 at ¶ 50.
[42]  Doc. 15 at ¶ 51.
[43]  Doc. 15 at ¶¶ 52-53.
[44]  Doc. 15 at ¶ 54.
[45]  Doc. 15 at ¶ 55.
[46]  Doc. 15 at ¶ 56.
[47]  Doc. 15 at ¶ 59.

Bravo block").[48]  Defendants would not allow Stokes to work on any other block other than Bravo Block.[49]

### 3. Stokes' Injuries and Medical Condition, Medical Leave, and Termination

Defendants' treatment of Stokes caused Stokes to suffer severe emotional and physical injuries.[50]  For example, Stokes felt "extremely humiliated, degraded, victimized, embarrassed and emotionally distressed."[51]

Stokes had three heart attacks during her employment with Defendants.[52] Stokes' heart condition is a disability under the Americans with Disabilities Act, as it affects one or more major life conditions.[53]  Major life conditions affected by Stokes' heart condition include breathing, sleeping, walking, running, and working.[54]  Stokes' heart attacks were caused by the stress that Defendants induced.[55]

Further, Stokes suffered from diabetes.  Diabetes is also a disability under the Americans with Disabilities Act, as it affects one or more major life conditions, including but not limited to eating.[56]  Stokes informed Defendants of her medical conditions, including diabetes, her heart condition, and the shoulder injury that the

---

[48]   Doc. 15 at ¶ 60.
[49]   Doc. 15 at ¶ 61.
[50]   Doc. 15 at ¶ 62.
[51]   Doc. 15 at ¶¶ 99, 102.
[52]   Doc. 15 at ¶ 63.
[53]   Doc. 15 at ¶ 64.
[54]   Doc. 15 at ¶ 65.
[55]   Doc. 15 at ¶ 66.
[56]   Doc. 15 at ¶ 96.

Court describes below.[57]  Defendants would not allow Stokes to take short breaks to administer insulin.[58]

During Stokes' 18 months on the Bravo Block, Defendants denied her breaks to use the restroom and to eat lunch.[59]  Stokes continued to ask that someone cover her block so that she could take breaks such as bathroom breaks and lunch breaks.[60]  Defendants refused and would not relieve Stokes so that she could take a break.[61]

On or around July 2018, Stokes began to suffer from shoulder pain.[62]  Stokes sought medical treatment for the shoulder pain; she was given a cortisone shot that did not work.[63]  On or around August 20, 2018, Stokes was scheduled for a shoulder surgery.[64]  Knowing that she was going to be out of work for a long period of time, Stokes applied for leave under the Family and Medical Leave Act ("FMLA").[65]

Marcie Strachko advised Stokes that Stokes was approved for 11 weeks of FMLA leave for her shoulder surgery.[66]  Strachko clearly stated: "you are

---

[57]  Doc. 15 at ¶¶ 89-91.
[58]  Doc. 15 at ¶ 95.
[59]  Doc. 15 at ¶ 67.
[60]  Doc. 15 at ¶ 68.
[61]  Doc. 15 at ¶ 69.
[62]  Doc. 15 at ¶ 70.
[63]  Doc. 15 at ¶ 71.
[64]  Doc. 15 at ¶ 72.
[65]  Doc. 15 at ¶ 73.
[66]  Doc. 15 at ¶ 74.

approved for just 11 week[s]."[67]  This was below the 12 weeks of FMLA leave to which Stokes had a right.[68]

Stokes went on medical leave and received the necessary surgery to repair her shoulder.[69]  On or around November 18, 2018, Stokes was terminated while on FMLA leave.[70]  Strachko was involved in the decision to terminate Stokes' employment.[71]  Warden David Varano was involved in the decisions to terminate Stokes' employment and to deny her reinstatement in the same or in a substantially similar position after her medical leave concluded.[72]  Defendants did not allow Stokes to return to work from her FMLA leave.[73]  As a result, Stokes "has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation to which such employment entailed."[74]

### 4.  Background Procedural History

After being denied the chance to return to work, Stokes, upset and still in pain from recovering from her surgery, filed a grievance with her union, SEIU Local 668.[75]  Further, Stokes reported the conduct at her workplace.[76]  She

---

[67]  Doc. 15 at ¶ 75.
[68]  *See* Doc. 15 at ¶ 76.
[69]  Doc. 15 at ¶ 77.
[70]  Doc. 15 at ¶ 78.
[71]  *See* Doc. 15 at ¶ 79.
[72]  Doc. 15 at ¶¶ 80-81.
[73]  *See* Doc. 15 at ¶¶ 82-83.
[74]  *See* Doc. 15 at ¶¶ 103-04.
[75]  Doc. 15 at ¶ 84.
[76]  *See* Doc. 15 at ¶ 147.

"submitted a written statement to report" the conduct and generally "continued to oppose" it.[77]

Also, on or around January 28, 2019, Stokes filed a charge of discrimination with the Equal Employment Opportunity Commission against Defendants.  This charge was dual-filed with the Pennsylvania Human Relations Commission.[78]  On or about September 17, 2019, the EEOC issued and sent a dismissal and notice of rights to Stokes.  This notice required that Stokes file a civil action within ninety days.[79]

### C.    Analysis

As a procedural matter, Defendants argue that defendants "Columbia County Prisons" and "Columbia County Commissioners" should be struck from the amended complaint, because they are merely duplicative of another named defendant, "Columbia County."[80]

Federal Rule of Civil Procedure 12(f) permits a motion to strike "redundant" allegations from pleadings.  Stokes does not appear to seriously contest that defendants "Columbia County Prisons" and "Columbia County Commissioners" are redundant given the inclusion of "Columbia County" as a defendant.[81]

---

[77]   Doc. 15 at ¶ 146.
[78]   Doc. 15 at ¶ 16.
[79]   Doc. 15 at ¶ 18.
[80]   Doc. 18 at 9-10.
[81]   *See* Doc. 21.

Therefore, the Court will strike these two redundant Defendants from Stokes'
amended complaint.

Defendants also raise a substantive critique: they argue that Stokes has not
alleged that she engaged in "protected activity."[82]  Further, Defendants argue that
Stokes has failed to establish the requisite causal connection between her alleged
protected activity and the alleged adverse action that Defendants took.[83]

Defendants' arguments suffer from a dispositive deficiency.  Defendants
protest that Stokes has not made out a prima facie case of retaliation.  But this
qualm is misplaced at this stage of the proceeding.

As I related above when discussing the relevant legal standards, Stokes is
not required to make out a prima facie case of retaliation at the motion to dismiss
phase.  Instead, Stokes' retaliation claim may survive a motion to dismiss "if she
pleads sufficient factual allegations to raise a reasonable expectation that discovery
will reveal evidence of the following elements: (1) she engaged in conduct
protected by Title VII; (2) the employer took adverse action against her; and (3) a
causal link exists between her protected conduct and the employer's adverse
action."[84]

As I stated above, I am required to draw all inferences from the facts in
favor of Stokes.  Here, by drawing these inferences, I find that Stokes has "raise[d]

---

[82]  Doc. 18 at 5-7.
[83]  Doc. 18 at 7-9.
[84]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

a reasonable expectation that discovery will reveal evidence of" her protected activity (as alleged, reporting the discrimination and harassment against her, and submitting a written statement in support)[85] and the associated causal link.[86] Defendants, of course, are free to challenge the sufficiency of Stokes' *prima facie* case of retaliation later, after the processes of discovery run their course.

## III.   CONCLUSION

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[85]   *See* Doc. 15 at ¶¶ 146-48.
[86]   *See* Doc. 15 at ¶¶ 58-61, 67-78.